Nott, J.,
delivered the opinion of the court:
We are agreed that the claimant was justly and legally entitled to be paid for the additional service, .which at the Postmaster-General’s request, and at great expense to himself, he rendered; that the service was not contemplated by the original contracts, nor by the subsequent order for additional mail service between Omaha and Kearney City; and that the compensation of $35,100, which he now seeks to recover, is fair and reasonable. But this meritorious cause of action the claim *369 ant, by bis subsequent conduct, seems to have forfeited. The decision of the Postmaster-General in February, 1862, that the compensation sought was not due, and that the extra service was properly referable to the supplemental agreement for an improved mail service on one of the claimant’s five routes, though clearly erroneous, rendered the claim one of dispute'; "and his declaration that if it were to be pressed he would withdraw, as he had a legal right to do, the improved service then being performed at the rate of $14,000 a year, threw upon the claimant the burden of electing one or the other — the continuance of his existing contract, or the prosecution of his claim for service, already rendered. By his silence he led the Postmaster-General to believe that he acquiesced in the construction-which had been given to their pre-existing agreement; and by subsequently accepting the consideration of that agreement after the matter had thus become-one of dispute, he accepted it upon the implied condition that it was to put an end to-the matter in controversy.
“The general principal now is, that where the conduct of a party has been such as to induce action-by another, he shall be precluded from afterward asserting-to the prejudice of that other the contrary of that of which his conduct has induced the belief.” Per Strong, J.; Hill v. Epley, (7 Casey, Penn. R., p. 334.) “As a general rule, a party will be concluded from denying his own acts or admissions which were expressly designed to influence the conduct of another, and did so influence it, and when such denial will operate to the injury of the latter.” Per Nelson, Ch. J.; Welland Canal Co. v. Hathaway, (8 Wend. R., p. 483.) “Where aman has been silent when in conscience he ought to have spoken, he shall be debarred from speaking when conscience requires him to be silent.” Per Thompson, J.; Niven v. Belknap, (2 Johns. R., p. 589.) “No one is permitted to keep silentwhen he should speak, and thereby mislead another to his injury.” Per Davis, J.; Gregg v. Von Phul, (1 Wall., p. 281.) “An admission by a party intended to influence the conduct of the man with whom he was dealing, and actually leading him into a line of conduct which must be prejudicial to his interests,” constitutes “ the very definition of an estoppel in pais.” Per Cowen, J.; Dezell v. Odell, (3 Hill R., p. 219.) “And if, whatever a man’s real intention may be, he so conducts himself that a reasonable man would take the representation to be true, and believe that it was meant that he should act *370 upon it, and did act upon it as true, the party making the representation would be equally precluded from contesting its truth; and conduct by negligence or omission, where there is a duty cast upon a person, by usage of trade or otherwise, to disclose the truth, may often have the same effect.’’ Per Parke, B.; Freeman v. Cook, (2 Exch. R., p. 663.)
It is to be noted here that the Postmaster-General possessed the reserved right of terminating at any time the service which the claimant was then performing. If the contract had been binding mutually for a fixed period, so that the Postmaster-General’s notice would have been a mere threat to harass the contractor by taking away from him an employment which he was legally entitled to enjoy, the equitable obligation to reply would not have fallen upon him. But when the Postmaster-General had the legal right to curtail the public expenditure by discontinuing the service, and distinctly informed the contractor that he should do so if the disputed claim was to be pressed, then the contractor was bound in equity and good conscience to inform the Postmaster-General that he did not acquiesce in his decision. His silence must have been intended "to influence the conduct” of the Postmaster-General, “ actually leading him into a line of conduct”'which was prejudicial to the interests of the defendants, whose' representative he was, and it constitutes " the very definition of an estoppel in pais.”
The only doubt that the case suggests arises from the smallness of the benefit which the contractor retained by his admission, and the comparative magnitude of the claim which he consented to forego. He was receiving for the additional service but $14,000 a year, and there remained but the third of a year ere the contract would expire, and against this he had a meritorious cause of action, amounting to "upward of $35,000. But as the smallest consideration of value is sufficient to sustain the obligation of a contract, so any substantial loss to be suffered may be enough to entitle a party to the benefit of an equitable estoppel; and courts, which cannot estimate the motives of men, cannot relieve for the smallness of the injury inflicted in the one case more than for the inadequacy of the benefit received in the other.
The judgment of the court is that the petition be dismissed.
Loreto, J., did not sit in this case, and took no part in the decision.