Madden, Judge,
delivered the opinion of the court:
Plaintiff was the successful bidder for the construction of four double sets of nurses’ quarters at the United States Military Academy at West Point. The contract was executed by the contracting officer of the defendant and by plaintiff on December 27, 1933, but was expressly made subject to the approval of the Quartermaster General or such other officer as he might designate. The. contract provided that the work should commence on or before January 5,1934, and should be completed on or before July 4,1934.
Plaintiff did not complete the work until January 25,1935, long after the completion date of the contract, although that date was extended by the defendant forty-five days, to August 18,1934, as we shall see. When final payment was made, plaintiff was charged $3,200 for liquidated damages at $20 per day for lateness in completion, and it now sues to recover that amount, as well as an amount for overhead expenses incurred during the period of delay in the completion of its contract.
*306 The contract was not approved as required until February 8,1934. Plaintiff claims that it was a breach of contract by the defendant to delay approval so long and that therefore the provision of the contract fixing an agreed time for completion was nullified, and plaintiff was obliged only to complete the work within a reasonable time, which it asserts that it did.
It is true that, until the contract was approved as required by its terms, it was not binding on either party. Whatever plaintiff did, it did at its own risk. But it did proceed, at such risk, to let subcontracts and to do such work on the ground as the unusually severe weather would permit, which was very little. There is no evidence that it refrained, because of the want of approval, from doing anything it would have done if the contract had been approved, or that the completion of the work was at all delayed by the lateness of the approval. The approval was, apparently, unreasonably delayed. Perhaps plaintiff could have repudiated its contract for that reason. But in fact the delay had no consequence, and plaintiff gave no thought to it. In that situation, the requirement of the contract that it be completed by a certain time should not be regarded as nullified merely because it was not in legal effect during a time when no more than was done would have been done under it if it had been in legal effect. Besides, as we shall see, plaintiff was granted an extension of time because of the unusually inclement weather which occurred during the period while approval was delayed, and thereafter, so that in the end practically none of the delay in the approval ran against plaintiff’s contract time.
Plaintiff’s contract contained the usual provision that requests for extension of time should be made in writing to the contracting officer, whose decision should be final, subject to an appeal by the contractor to the head of the department. Although, after the completion of the work and final payment, plaintiff brought up numerous situations in which it claimed that the action or inaction of the defendant’s agents, or other circumstances, delayed its work, it made during the time it was performing the contract, only one request to the contracting officer for an extension of'time. On April 14, *307 1934, it requested that because of the unusually inclement weather, the completion date be moved forward 60 days. The contracting officer, having similar requests from other contractors then engaged in other work at West Point, checked the weather records with those of other years and made a recommendation to the Quartermaster General that plaintiff’s time be extended 45 days. He made the same recommendation for those of the other contractors who had asked for that much of an extension. His recommendation was approved by the Quartermaster General and he wrote plaintiff the letter quoted in finding 17. Plaintiff made no objection and took no appeal.
Plaintiff now complains that the contracting officer did not, individually and without consulting his superiors, decide the question. In fact he did, although he did not communicate his decision until he had submitted it to his superior officer in the form of a recommendation, as was the usual practice. His letter to plaintiff did attribute his decision to the War Department which, perhaps, gave it an air of finality which would discourage an appeal. It did not detail the evidence upon which the conclusion was based, but we think that could hardly have been expected. The conclusion obviously was that plaintiff’s work had been set back about 45 days by bad weather and it should have that much more time. It was not necessary to recite the thermometer readings. As to his consulting his superior, we see no objection to that, if the contracting officer, in fact, put his mind on the problem as it existed at the place where the contract was being carried out, and if, as here, the decision which he communicated to the contractor was his own, although it also had the approval of his superior. The question had not, in fact, been submitted to the head of the department, as plaintiff could have learned if it had inquired or shown any desire to appeal as provided in the contract.
The extension awarded plaintiff was, apparently, about right. It gave plaintiff three-fourths of what it asked. It was certainly not a grossly erroneous decision on the part of any agent of the defendant.
*308 Plaintiff, on March 31, 1934, requested of the contracting officer that it be permitted to work its men forty hours a week in order to expedite the work and make up for time lost or which it feared losing because of rainy weather. The contract provided for a maximum of thirty hours a week, as did the regulations of the Federal Emergency Administration of Public Works under which the job was being done, as the invitations to bidders had shown. It may be that the contracting officer had the authority to grant this request under Article 9 of the contract. As in the case of the requested extension of completion time discussed above, he consulted the Quartermaster General and sent to plaintiff a denial of the request. Plaintiff made no further objection and took no appeal. Plaintiff did not make use of the privilege which the contract gave it, of making up time lost within twenty days thereafter. Here again, no abuse of discretion by an agent of the defendant is shown.
As to the numerous other matters which plaintiff recited after the completion of the contract as having caused delay, most of them caused no delay in fact. As to none of them, did plaintiff, at the time they occurred, request any extension of time.
Plaintiff improvidently agreed, in its contract, to complete it in a time that was too short. The only extraordinary circumstance that appears to have occurred after the contract was made, viz, the unusually severe weather of the early months of 1934, was compensated by a considerable extension of time. Plaintiff seems to have done the work carefully and well, but was late in completing it. The liquidated damages deducted were in accordance with the terms of the contract, and plaintiff has no valid ground for the recovery of them. It follows from our conclusion that the lateness of completion was a breach of the contract, that plaintiff has no valid claim for its overhead expenses during the period of delay. The petition will be dismissed.
It is so ordered.
Jones, Judge; Littleton, Judge; and Whaley, OKief Justice, concur.
WhitakeR,, Judge, took no part in the decision of this case.