### BLAIR v. UNITED STATES et al.
Civ. No. 387-M.

District Court, M. D. Alabama, N. D.
June 24, 1946.

Fred S. Ball, Jr., of Montgomery, Ala., for plaintiff.

Thomas M. Stowers, Asst. U. S. Atty., of Montgomery, Ala., and P. R. Boesch, Atty., Federal Public Housing Authority, of Atlanta, Ga., for defendants.

CHARLES B. KENNAMER, District Judge.

Plaintiff, by complaint twice amended, claims of the defendants the sum of $10,-000. Defendants, by answer, denied the indebtedness. The court, having heard testimony offered by the respective parties, and argument of counsel, makes the following opinion, findings of fact, conclusions of law, and order:

The plaintiff bases his claim for payment for. repair work done on the Key West houses, caused by the Hurricane of October 17th and 18th, on the original written contract between plaintiff and defendant, or on an alleged oral contract made by the Regional Director and the plaintiff's representative immediately after the hurricane, or upon a quantum meruit basis.

If there was any provision in the written contract touching upon this subject, it would be Section 3, Division DTH-1, of the specifications, and this provision placed all responsibility for all buildings, fixtures, equipment, etc., including loss, breakage, or other damage thereto from date of notice to proceed until completion and acceptance of the project, upon the plaintiff.

And, under the provisions of the written contract, the plaintiff had bound himself, in the event of a dispute between the parties, to let the contracting officer decide the matter, subject to a written appeal to the head of the department concerned, whose decision would be final and conclusive upon the parties.

█ A method fixed in the contract for the settlement of disputes is, in the absence of fraud, usually regarded as valid and binding on the parties, as where it is agreed to submit such question to a referee or arbitrators. 17 C.J.S., Contracts, § 497, page 1013, notes 54 and 55.

█ An oral agreement between the Regional Director and the plaintiff's representative would not be binding upon the defendants, even if such had been made, in view of Article 5, of the written contract, which provided that no charge for extra work could be allowed unless the same had been ordered in writing and the price stated in such order; however, in this instance, the Regional Director, irrespective of what his oral conversation might have been with the plaintiff's representative, wrote the plaintiff on October 27, 1944, nine days after the hurricane, that he, the plaintiff, "will be expected to complete the project in accordance with the terms of the contract, without any additional cost to the government as a result of damage caused by the hurricane." And he was affirmed in this decision by the Ap-

peal Board, which was provided for in Article 15 of the contract. If the plaintiff did any repair work after receipt of this letter, such work, of course, was performed with knowledge that this was the intent of the defendants, and their interpretation of the written contract. Whether any repair work was performed after the receipt of this letter by the plaintiff, and if any, what amount, the evidence is not conclusive enough for the court to make a decision, and the court does not feel that such is controlling in this matter.

■ For work done, or material furnished, by plaintiff in fulfilling his contract with the defendants, that was not within the terms of the written contract, a properly executed written contract between the parties was essential for such extra work or materials, and in the absence of such additional written contract, if the plaintiff performed extra work and did furnish additional materials on an oral request or by verbal direction of the Regional Director, which was not agreed upon by the respective parties in the original written contract, then plaintiff's remedy, if any, is to apply to Congress for relief. It is not for the courts to revise the written contract of the parties. Yuhasz et al. v. United States, 7 Cir., 109 F.2d 467.

This court is of the opinion that this repair work was not contemplated by the parties at the time the original written contract was executed; that Section 3, Division DTH–1, of the specifications, was not intended by either of the parties to make of the plaintiff an insurer of the property to any greater extent than loss, breakage, or damage caused by negligence on the part of the plaintiff. And this court is of the opinion that this repair work was extra work; however, there was a total failure to comply with the provisions of the contract, and though it may be a hard case, since the court finds that the work was in fact extra and of considerable value, yet plaintiff cannot recover in a suit at law for that which, though extra, was not ordered in the manner required by the contract. It may be gratuitous on the part of the court, but this court is of the opinion that the plaintiff has a meritorious claim that could only be discharged by congres-sional action. Upon the facts, plaintiff cannot recover in an action at law either on the contract or on quantum meruit. Plumley v. United States, 226 U.S. 545, 33 S.Ct. 139, 57 L.Ed. 342, quoted in Yuhasz et al. v. United States, 7 Cir., 109 F.2d 467, which is a case very much in point to the one now before this court.

### Findings of Fact

Algernon Blair, plaintiff, is a citizen of Montgomery, Alabama. He entered into a written contract with the defendants, through their representative, John P. Broome, Director, Region IV, on the 26th day of May, 1944, wherein it was agreed between the parties that the plaintiff would, at Granada, Mississippi, dismantle certain prefabricated buildings, and would transport them to Key West, Florida, and there reassemble them according to the plans and specifications attached to said contract. Plaintiff was to receive the sum of $267,360 for the full and entire performance of the said contract.

The work under the contract was to begin June 5, 1944, and be completed by September 3, 1944. By change order dated March 5, 1945, the completion date was extended 108 days, or until December 20, 1944.

Memoranda of acceptance of occupancy of certain buildings were given the plaintiff by the defendants dated as follows: October 13, 1944, November 24, 1944, November 29, 1944, and December 20, 1944.

On the 17th and 18th days of October, 1944, a hurricane struck Key West, Florida, and caused considerable damage to certain of these buildings that had been erected or were in the process of being erected by the plaintiff for the defendants.

After the hurricane of October 17th and 18th, the Regional Director of the Defendant Housing Agencies, by telephone conversation to the plaintiff's representative, told the representative to go ahead to protect the work and to repair the damage and that the question of whether it was plaintiff's loss or defendant's loss would be decided later. The plaintiff thereupon repaired the damage to the buildings caused by the hurricane.

Plaintiff, upon completion of the repair work caused by the hurricane, requested of the defendants payment for said work in addition to the amount due under the contract, on the ground that such work was not contemplated by the contract and was work in addition to that required and performed pursuant to the direction of the contracting officer.

In a letter of October 27, 1944, the Regional Director wrote the plaintiff, among other things, as follows: "In view of the foregoing, you are advised that the Contractor will be expected to complete the project in accordance with the terms of the Contract, without any additional cost to the Government as a result of damage caused by the hurricane."

On November 15, 1944, the plaintiff, under Article 15 of the contract, took a written appeal to the proper heads of the respective departments concerned. The appeal was denied on December 26, 1944.

Article 15, of the written contract, provides as follows: "Disputes. Except as otherwise specifically provided in this Contract, all disputes concerning questions of fact arising under this Contract shall be decided by the Contracting Officer subject to written appeal by the Contractor within 30 days to the head of the department concerned or his duly authorized representative, whose decision shall be final and conclusive upon the parties thereto. In the meantime the Contractor shall diligently proceed with the work as directed."

Section 19 of the specifications, made part of the contract, provides: (a) The Contractor shall be responsible for all damages to persons or property that occur as a result of his fault or negligence * * * etc."

Section 3, Division DTH 1, of the specifications, provides: "The contractor shall be responsible for all buildings, fixtures, equipment and appurtenances to be moved and re-erected, including any loss, breakage, or other damage thereto from date of Notice to Proceed until completion and acceptance of the project."

Article 5, of the written contract, provides: "Extras. Except as otherwise herein provided, no charge for any extra work or material will be allowed unless the same has been ordered in writing by the Contracting Officer and the price stated in such order."

On March 9, 1945, plaintiff, through his superintendent in charge of the Key West project, issued to the defendants a certificate of release whereby the defendants were released from any and all claims of the plaintiff arising under or by virtue of the aforesaid contract. In this certificate of lease, under sub-Section (d) the word "Claims" appears, and in the column opposite this, the word "None" was written in.

Plaintiff has been paid $277,000 for the work done under the original contract.

### Conclusions of Law

The district courts shall have original jurisdiction as follows: "Concurrent with the Court of Claims, of all claims not exceeding $10,000 founded upon * * * any contract, express or implied, with the Government of the United States, or for damages," etc. in respect to which claims the party would be entitled to redress against the United States, etc. Act of March 3, 1887, as amended, Title 28 U.S. C.A. § 41(20), and §§ 761 to 765, inclusive.

Where the contract provides that there shall be no charge for extra work unless a written agreement is made therefor, the builder cannot recover compensation as for extra work on account of alterations made at the oral request or consent of the owner but for which no agreement to pay additional compensation is made. 17 C.J.S. Contracts, § 371, page 847, note 38.

The law is clear that in contracts of this character defendant is not liable either on quantum meruit or upon the contract unless the changes or extras were authorized by the proper officials of defendant and were approved as provided by the contract. Plumley v. United States, 226 U.S. 545, 33 S.Ct. 139, 57 L.Ed. 342; Hawkins v. United States, 96 U.S. 689, 24 L.Ed. 607; Yuhasz et al. v. United States, 7 Cir., 109 F.2d 467.

"Extra work," as used in connection with a building and construction con-

tract, means work of a character not contemplated by the parties and not controlled by the contract. 17 C.J.S., Contracts, § 371, page 851, note 85.

As to what constitutes extra work for which a contractor is entitled to additional compensation depends, generally, on the construction of the particular contract. 17 C.J.S., Contracts, § 371, page 851, note 87.

### Order of the Court

It is ordered, adjudged and decreed by the court that the verdict and judgment in this cause be, and the same is, for the defendants, and plaintiff's complaint be, and the same is, dismissed.

It is further ordered that plaintiff be taxed with the cost in this case, for which execution will issue.